UNITED STATES of America ex rel. Jacques TIRADO, Petitioner,

v.

Roy F. BOMBARD, Superintendent, Green Haven Correctional Facility, Respondent.

No. 76 Civ. 2180–CSH.

United States District Court, S. D. New York.

Dec. 3, 1976.

Jacques Tirado, pro se.

Louis J. Lefkowitz, Atty. Gen. of N.Y., New York City by Asst. Atty. Gen. David L. Birch, Brooklyn, N.Y., of counsel, for respondent.

MEMORANDUM AND ORDER

HAIGHT, District Judge:

Petitioner Jacques Tirado is now serving a prison term of eight to twenty-five years, imposed by Justice Rosenberg, Supreme Court, New York County. Sentence followed a January 9, 1973 conviction by a jury on the charges of possession of a dangerous drug in the second degree, and criminally using drug paraphernalia in the second degree. The conviction was affirmed, *People v. Tirado,* 47 A.D.2d 193, 366 N.Y.S.2d 140 (1st Dept. 1975) (Murphy, J., dissenting). The Court of Appeals affirmed in a memorandum, 38 N.Y.2d 955, 384 N.Y.S.2d 151, 348 N.E.2d 608 (1975), on the majority opinion by Justice Stevens.

Petitioner now seeks relief by writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 and 2254. He alleges four distinct grounds for declaring his conviction and subsequent custody to have been obtained by violation of the United States Constitution.

First, Tirado alleges that his Fourth Amendment rights were violated by an insufficient affidavit submitted in support of the warrant application, and by the failure of the People to establish the reliability of the informant who supplied the information used to obtain the warrant. Petitioner further alleges that the warrant was in essence based on hearsay, and that his motion to suppress the evidence, held before Justice McQuillan, should have been granted.

Second, Petitioner alleges that certain of his statements, made to arresting officers, were erroneously admitted at trial. He maintains that he was not given the notice of use required by the New York Criminal Procedure Law.

Petitioner's third point is his allegation that the admission into evidence, at trial, of $38,765 in cash constituted undue prejudice.

His fourth and final allegation is that the instructions by the trial judge as to joint possession, given to the jury while they were deliberating, and upon their request for additional information as to the nature of possession, constituted error which would require a new trial.

## ISSUES

### I. Petitioner's Fourth Amendment Claims

The Petitioner alleges claims which, if true, would constitute violations of the Fourth Amendment. These claims go to the validity of the affidavit underlying the search warrant issued for his apartment, as well as going to the sufficiency of the warrant itself. Petitioner contends that because of these defects, his original suppression motion should have been granted, and the drugs and cash should have been excluded from trial.

This court cannot evaluate the factual and legal allegations which Petitioner Tirado advances in support of his Fourth Amendment claims. Such evaluation here is precluded by the recent decision of the Supreme Court in *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which held:

"Where the state has provided opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 96 S.Ct. 3037, 3052.

In a footnote to the above passage, the Court explained that its holding does not mean that a federal court lacks jurisdiction over a Fourth Amendment claim, but only that a federal court's application of the exclusionary rule is limited to instances were there has been first, a Fourth Amendment violation, and second, denial of a full and fair opportunity to litigate that matter in a state court. 96 S.Ct. 3037, 3052 n. 37. Petitioner makes no showing of such a deni-

al of a constitutionally sufficient opportunity. On the contrary, after Petitioner was unsuccessful in his suppression hearing, he further litigated the claim before the Appellate Division and the Court of Appeals. Accordingly, this court may not consider Petitioner's Fourth Amendment claim.

### II. Admission of Defendant's Statements to Arresting Officers

Petitioner also alleges that certain of his statements, made to police officers during the course of his arrest and booking, were erroneously admitted at trial. He argues that under the New York Criminal Procedure Law, notice must be given when such statements by a defendant are used against him at trial.

The basis of the notice requirement is to allow a defendant the opportunity to challenge the voluntariness of a statement made to law enforcement officials, when the statement pertains to the charged offense. C.P.L. Sec. 60.45 states that:

"Evidence of a written or oral confession, admission, or other statement made by a defendant with respect to his participation or lack of participation in the offense charged, may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made."

Subsection (2) of C.P.L. Sec. 60.45 defines an involuntarily made statement. Further, C.P.L. Sec. 710.30 sets forth clear rules of notice to a defendant whose statements were made to public servants and are then sought to be admitted at trial, as is the case with Petitioner. Sec. 710.30(2) requires that notice of the People's intent to introduce the statements be served upon the defendant before trial, and that the defendant be given reasonable opportunity to move for a pre-trial suppression hearing. However, subdivision (3) of C.P.L. Sec. 710.30 states that in the absence of such notice, no evidence of such statements made by defendant to public servants may be admitted at trial "unless he [the defendant] has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied." In the instant case, that is

precisely what transpired. The suppression hearing court found the statements to be voluntary, after Petitioner had argued his motions on that matter. The purpose of the notice requirement is to prevent a defendant from being taken by surprise and being forced to litigate the issue of voluntariness for the first time, at the trial. When the question has been decided by a pre-trial suppression hearing, the unnotified defendant was not prejudiced, particularly since even if unsuccessful at the hearing, he may re-litigate the voluntariness at trial.

■ In addition, it is apparent that Petitioner has failed to present this question to the New York Court of Appeals. He has not exhausted his state remedies, and, as a matter of policy, this concept of exhaustion relates to the appropriate exercise of the power which federal courts possess over review of state criminal proceedings. *Fay v. Noia,* 372 U.S. 391, 420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). 28 U.S.C. § 2254(b), which applies to state prisoners seeking federal habeas corpus relief, requires that an applicant exhaust the remedies available in the state courts. Accordingly, even if Petitioner's claim had greater surface substance, the fact remains that he has not pursued the available state appellate procedures. On that basis as well, I reject this contention.

### III.  The Introduction of the Cash at Trial

Petitioner alleges that the introduction at trial of $38,765 in cash, over his objections, was unconstitutional since it was so prejudicial and inflammatory as to deny him due process of law. I find that there was no undue prejudice, and that the probative value of the evidence outweighed any existing prejudice.

■ The testimony accompanying the cash was admitted only to show that Petitioner had the financial ability to possess thirteen ounces of cocaine, and for that limited purpose it was properly admissible. However, even if the cash had been introduced to demonstrate that Petitioner's wealth represented "ill-gotten gains", the admission would have nonetheless been proper. As the Second Circuit held in *United States v. Jackskion,* 102 F.2d 683, 684 (2d Cir. 1939), *cert. denied,* 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517 (1939):

> "It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive, evidence of the sudden acquisition of money by the defendant is admissible, even though the source of the money is not traced."

The court went on to note that even if the introduction of the evidence—bank accounts—was erroneous, reversal was not required if other evidence proved the defendant's guilt beyond a reasonable doubt.

A recent decision by this circuit held that: "The possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means." *United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir. 1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

Thus, the introduction of the cash at Petitioner's trial did not constitute error, and is not violative of due process.

### IV.  The Trial Court's Charge to the Jury

When Justice Rosenberg charged the jury, he included in the charge an explanation of the meaning of "constructive possession" and the rules concerning circumstantial evidence. The Petitioner did not object to these charges. The jury, while deliberating, sent the court a note asking if the sole fact that narcotics were present in Tirado's apartment constituted possession. The court replied that it did not, and then repeated its charge as to constructive possession and circumstantial evidence. The jury later requested another rereading of the original charge. As part of its response to this request, the trial court instructed the jury as to joint possession, in addition to repeating the earlier explanations of physical and constructive possession. Petitioner's counsel objected, arguing that it was

error to charge as to joint possession, since possession may be either constructive or joint, but not both. This objection was denied, since as a statement of law, it was incorrect. *People v. Murphy,* 276 N.Y. 612, 12 N.E.2d 602 (1938).

Petitioner's appeals through the New York state courts, as well as his habeas corpus application here, have stressed an argument somewhat different than that raised at trial. Petitioner alleges that as a result of the supplemental charge as to joint possession, his conviction should be deemed to have been obtained in violation of the Constitution. Petitioner argues that he had a right to be tried on the indictment, and that the charge of joint possession caused the jury to consider a new crime, of which Petitioner had neither notice nor opportunity to refute.

■ The first issue which must be resolved is whether to apply federal or state law in determining the existence of any error, and the consequences which attach should error be found. Petitioner alleges that the jury charge at issue denied him his Constitutional rights to due process and to a fair trial. In *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the Supreme Court established the Constitutional standard which a federal court should apply when considering a habeas corpus application alleging error in a state jury charge. The Court stated that the question which the federal court must ask is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* at 147, 94 S.Ct. at 400. The Court explained that a federal court should permit a state court conviction to stand unless the challenged instruction violated some right which is guaranteed to the defendant by the Fourteenth Amendment. The Court further stated that it is not enough that the instruction is "undesirable, erroneous, or even 'universally condemned'." The conviction will not be deemed violative of the Constitution unless the erroneous charge so infected the entire trial that the resulting conviction violates due process. See *Cupp*

*v. Naughten, supra,* 146–47, 94 S.Ct. 396. In determining whether or not the erroneous charge "infected" the trial to such an extent that the Constitution was violated, the Court stated that:

"A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Cupp v. Naughten, supra,* 146–47, 94 S.Ct. at 400.

■ Looking to the context of the overall charge, and recognizing that "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge", *Cupp v. Naughten* at 147, 94 S.Ct. at 400. I find that Justice Rosenberg's supplemental charge as to joint possession did not violate the Constitution. If it was an error at all, it was an error of state procedure.

■ The charge as to the joint possession cannot be deemed to have so infected the entire trial as to render the conviction violative of due process, since the elements to be proven, and the People's burden of proof, remained the exact same whether the possession was joint or exclusive. The jury in either case had to find beyond a reasonable doubt that Petitioner had dominion and control over what he knew to be contraband. Accordingly, the "infection" of the entire trial, which is necessary to raise the alleged error to a Constitutional claim, is absent, and state law shall be applied in determining whether the alleged error would be reversible or harmless.

New York state law distinguishes between errors which are Constitutional and non-Constitutional, as well as between errors which are harmless and those which are reversible. *People v. Crimmins,* 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). Having already decided that the challenged jury charge is not a Constitutional violation, the only issue left to determine is whether the alleged error, if it actually were error, would be harmless or reversible. The Supreme Court position is

quite clear that the application of a state harmless error rule is a state question where it involves only errors of state procedure or state law. *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

▮ The New York state harmless error rule, set forth in *People v. Crimmins, supra,* is that reversal is not required in a non-Constitutional error, if the quantum and nature of the proof, excising the error, overwhelmingly and logically compel the conclusion that an honest and well-intentioned jury would have almost certainly convicted the defendant. *Crimmins,* 36 N.Y.2d at 241–42, 367 N.Y.S.2d 213, 326 N.E.2d 787. Even if the proof of guilt was overwhelming, the conviction could be reversed by a state appellate court if there was a "significant probability" that the jury would have acquitted the defendant but for the error. *Crimmins* at 242, 367 N.Y.S.2d 213, 326 N.E.2d 787.

▮ I have found that if there was error at all, it was to be resolved by state law, and the New York state courts have affirmed the denial of Petitioner's initial objection to the joint possession charge. Thus, the Petitioner is not presenting a federal question, but rather, a state question, and the decision of the state courts shall be presumed to be correct, absent extenuating circumstances which are not alleged by this Petitioner. See 28 U.S.C. § 2254(d) and *Chapman v. California, supra.*

▮ Petitioner also alleges that there was insufficient evidence to support his conviction, aside from any error as to the jury charge. However, the question of insufficient evidence to sustain a conviction is not a proper question for federal habeas corpus relief, absent a complete lack of evidence. *United States ex rel Clark v. Zelker,* 321 F.Supp. 1085 (S.D.N.Y.1971), *United States ex rel Griffin v. Martin,* 409 F.2d 1300 (2d Cir. 1969). Accordingly, Petitioner cannot argue that the state court should have reversed the conviction regardless of any error.

The application for writ of habeas corpus is denied.

It is So Ordered.